UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

JUAN D. THORNTON,

    Plaintiff,

vs.

C/O SHARP, et al.,

    Defendants

Case No. 1:11 cv 01145 GSA PC

ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 26)

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).[1] Pending before the Court is Defendants' motion for summary judgment. Plaintiff has opposed the motion.[2]

**I.     Procedural History**

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Corcoran State Prison, brings this civil rights action against defendant correctional officials employed by the CDCR at Kern Valley State Prison (KVSP) in Delano.

---

[1] On July 25, 2011, Plaintiff filed a consent to proceed before a magistrate judge (ECF No. 7). On July 26, 2012, Defendants Grissom and Sharp filed a consent to proceed before a magistrate judge (ECF No. 24).

[2] On January 20, 2012, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 15.) Defendants served Plaintiff with the same notice on the same date that their motion for summary judgment was filed (ECF No. 26.)

1

The events at issue in this lawsuit occurred while Plaintiff was housed at KVSP.   In the original complaint on which this action proceeds, Plaintiff names as defendants the following individuals: Matthew Cate, Secretary of Corrections; K. Harrington, KVSP Warden; Sergeant Jose; Correctional Officer (C/O ) Sharp; C/O Grissom; C/O Ortiz; C/O Robles.[3]

Plaintiff alleges that on March 12, 2010, a physician at KVSP issued a Comprehensive Accommodation Chrono, directing that Plaintiff be housed on a lower bunk in a ground floor cell, based upon his seizure disorder.  A copy of the chrono was placed in Plaintiff's central file, sent to Plaintiff's housing unit, and provided to Plaintiff's correctional counselor.  On March 12, 2010, Plaintiff was housed on Facility B, Building 5, in a cell on the upper tier.  Plaintiff showed his chrono to Defendants Jose, Ortiz and Robles.  Plaintiff was told that he would get a lower bunk when one was available.  Plaintiff alleges that he never received a lower bunk while in Building 5.

On June 19, 2010, Plaintiff was moved to Building 4 to a cell on the upper tier.  The Building 4 housing officers were Defendants Sharp and Grissom.  Plaintiff alleges that Sharp and Grissom checked Plaintiff's housing criteria during the June 19, 2010 move, and was "thus made aware of Plaintiff's CDCR Form 7410 and his medical needs." (Compl. ¶ 18.)  On August 31, 2010, while lying on his assigned top bunk, Plaintiff had a seizure and fell from the bunk, hitting the concrete floor.  Plaintiff injured his back as a result.  Plaintiff was thereafter assigned a lower bunk on September 3, 2010.

///

---

[3] On January 3, 2012, an order was entered, dismissing Defendants Jose, Ortiz, Robles, Cate and Harrington.  The order specified that this action proceeds against Defendants Sharp and Grissom on Plaintiff's claim of failure to protect in violation of the Eighth Amendment.

2

## II. Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denial of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

3

truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is not 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### A.   Eighth Amendment

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994)(citing Helling v. McKinney, 509 U.S. 25, 31 (1993)). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty,

the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health . . . ." Id., at 843 (citing Helling, 509 U.S. at 35). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence … [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Id., at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which " a person disregards a risk of harm of which he was aware." Id., at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id., at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Id., at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

In order to meet their burden on summary judgment, Defendants must come forward with evidence that establishes, without dispute, that they did not know of and disregard any serious threat to Plaintiff's health or safety. Defendants' liability turns on whether there is evidence that establishes, without dispute, that they knew that Plaintiff was in danger of injuring himself from a seizure and acted with deliberate indifference to that danger. Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must draw the inference." Farmer, 511 U.S. at 837; see also Simmons v.

5

Navajo County, 609 F.3d 1011, 1017 (9th Cir. 2010); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002); Jeffers v. Gomez, 267 F.3d 895, 913 (9th Cir. 2001)(per curiam); Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995).

Defendants support their motion with the declarations of Defendants Sharp and Grissom, along with Plaintiff's deposition transcript. Both Defendants declare that as correctional officers, they are familiar with the procedures used to make bed moves for inmates. If an inmate is assigned to an upper bunk but shows them that they have a valid lower bunk chrono, they are trained to inform a sergeant or lieutenant that the inmate's housing assignment does not conform with a medical chrono. They cannot move an inmate until they receive a CDC 154 form authorizing the move. Without receiving this form, Defendants are unauthorized to make bed moves. Neither Defendant recalls Plaintiff nor do they recall Plaintiff ever showing them a lower bunk chrono. Based on their training, if an inmate had showed them a lower bunk chrono, they would have informed a sergeant or lieutenant that the inmate was requesting a lower bunk. They are not authorized to move an inmate to a lower bunk without first receiving authorization. (Grissom Decl. ¶¶ 2,3; Sharp Decl. ¶¶ 2,3.)

Defendants argue that Plaintiff's deposition establishes that Plaintiff did not fear falling off the top bunk when he had a seizure in the past (Pltf. Dep. 20:3.) Plaintiff did not believe there was any urgent need to be moved to a lower bunk (Id. 25:3.) Plaintiff never filed a grievance requesting a bed move although he was aware of the grievance process. (Id. 24:20-25:2.)

Regarding what, exactly, Defendants Sharp and Grissom was informed of, Plaintiff testified as follows:

> Q. And with respect to Officer Grissom, do you recall when you

6

spoke with Officer Grissom?

A. No.

Q. Do you recall if it was before or after Officer – speaking with Officer Garrison regarding your chrono?

A. No, I don't.

Q. Do you recall if there were any other witnesses or officers present when you spoke with Officer Grissom?

A. There was another officer, I don't know who, and there were inmates.  I remember speaking to Grissom in the office and at the cell.

Q. And do you recall what Officer Grissom said in response?

A. No.

Q. Do you recall what you told Officer Grissom specifically at the cell or at the office?

A. I told him I had a lower bunk chrono, and I showed him my paperwork.

Q. And you don't recall what he said in response?

A. He gave me the impression that I would be getting a lower bunk.

Q. And do you recall why –

A. I don't know –

Q. Do you recall why you had that impression?   Sorry.

A. From what he told me, I was under the impression that he would – I would be getting a lower bunk.

Q. And do you recall following up with him –

A. Yes.

Q. – at a later time?

7

    A. Yes.

    Q. And do you recall what happened at that time?

    A. Basically the same.

    Q. And with respect to Officer Sharp, do you recall when you spoke with him?

    A. It was with Grissom once.

    Q. So Grissom was there when you spoke with both of them?

    A. I was speaking to Sharp, but Grissom was there.

    Q. Okay. And was this before or after you had spoken with Officer Grissom regarding your Chrono?

    A. I don't remember.

    Q. Do you remember what Sharp said in response to this request?

    A. I was given the impression that I would be moved to a lower bunk.

    Q. Do you recall where you were when you had this conversation?

    A. In the office.

    Q. Do you recall anything about what gave you the impression that you would be moved to a lower bunk?

    A. Just what he told me.

(Pltf. Dep. 14:9-16:12 .)   Plaintiff testified that after receiving his chrono in the spring of 2010, he showed it to the floor officer, but Plaintiff could not recall the name of the floor officer. Plaintiff testified that when he was moved to Building 4, "I remember my move being denied because I had a lower bunk chrono, and then – I don't know when they told me. When I got to the building is when they told me I had a – I was on the top bunk." (Id. 23:17.) Plaintiff could

not recall who told him that.  Plaintiff showed "them" the chrono the next day, and was told that "they" would take care of it.  Plaintiff testified that he followed up with "those officers," and was told that a bottom bunk was not yet available.  Plaintiff could not remember how many times he asked to be moved to a lower bunk, and testified that he failed to file a grievance regarding the issue.  (Id. 24:23.)

Defendants' evidence establishes, without dispute, that they were aware that Plaintiff had a lower bunk chrono.  Plaintiff clearly testifies that he made both Defendants aware that he had a lower bunk chrono.  As noted, however, Defendants must be made aware of an objectively serious risk to Plaintiff's safety.  The evidence establishes that neither Defendant had notice of Plaintiff's particular danger of falling off of his bed as a result of his seizure disorder.  Defendants' s evidence establishes, at most, that they were aware that Plaintiff had a lower bunk chrono, but were unaware that Plaintiff was in danger of falling off his bunk due to seizure disorders.  Defendants' evidence establishes that there are no facts from which an inference could be drawn by Defendants that Plaintiff faced a risk of falling of his bunk due to a seizure disorder.

Further, Defendants argue that they were not authorized to move Plaintiff to a lower bunk without authorization from a sergeant or  lieutenant.  (Grissom Decl. ¶ 2; Sharp Decl. ¶ 2.)  Defendants argue that their only responsibility in this situation would have been to inform a sergeant or lieutenant that Plaintiff had an incorrect bed assignment.   Defendants declared that based on their training, if Plaintiff did inform them that he had a lower bunk chrono, they would have passed that information along to the appropriate person. (Grissom Decl. ¶3; Sharp Decl. ¶ 3.)  Absent such authorization, Defendants could not have moved Plaintiff to a lower bunk.  Id.

The Court, therefore, finds that Defendants have met their burden on summary judgment.

9

Defendants have submitted evidence that establishes the lack of a triable issue of material fact. Defendants' evidence establishes that although they were aware that Plaintiff had a lower bunk chrono, they were not aware that Plaintiff was in danger of falling off of his bunk due to a seizure. A failure to honor a lower bunk chrono, of itself, fails to subject Defendants to liability. Further, Defendants' evidence establishes that they did not have the authority to direct such a move. The burden therefore shifts to Plaintiff to come forward with evidence of a triable issue of material fact.

In support of his opposition, Plaintiff submits a copy of a CDC Form 7410, Comprehensive Accommodation Chrono, dated March 12, 2010. This chrono indicates that Plaintiff is to be housed in a lower bunk in a ground floor cell, along with other restrictions related to job assignments. There is no indication on the chrono regarding Plaintiff's medical condition, or any indication that Plaintiff is in danger of falling off an upper bunk due to a seizure. The chrono establishes, at most, that Defendants knew that Plaintiff had a lower bunk chrono, but it does not put Defendants on notice that Plaintiff was in danger of falling off an upper bunk due to a possible seizure.

Plaintiff also submits the declarations of inmates Justin Jackson and Vincent Reynolds. Inmate Jackson declares that "between the time we moved to cell 126 in mid-June of 2010 and the day the plaintiff was injured, myself and the plaintiff showed various floor staff (including C/O Grissom and C/O Sharp) on numerous occasions that the plaintiff had a lower bunk chrono and needed to be assigned a lower bunk. The officers said that they would 'handle it' and 'take care of it.'" (Jackson Decl. ¶ 2.) Jackson also declares that after Plaintiff fell, "floor staff" still refused to assign him a lower bunk ( Id. ¶ 3.)

Inmate Reynolds declares that "in the month of July 2010, I was in the office of building

4 talking to C/O Sharp and C/O Grissom about religious services.  Inmate Thornton came into the office and told the two officers that he had a copy of his lower bunk chrono that they could keep.  He then handed C/O Grissom the chrono and walked out of the office." (Reynolds Decl. ¶1.)

Plaintiff's complaint, filed under the penalty of perjury, will also be treated as an affidavit in support of his opposition.[4]  Plaintiff declares that:

> On June 19, 2010, Plaintiff moved from Building 5, Cell 123 up, to Building 4, Cell 126 up.  Building 4 housing officers were defendants' Sharp and Grissom.  This bed move was authorized by defendant Jose.
>
> Plaintiff is informed and believes, and thereon alleges that defendants Jose, Ortiz, Robles, Sharp, and Grissom checked plaintiff's housing criteria during the June 19, 2010 bed move and was thus made aware of plaintiff's CDCR Form 7410 and his medical needs.  These defendants disregarded plaintiff's medical needs and assigned him to a top bunk.

(Compl. ¶¶ 17-18.)

Plaintiff argues that "Defendants' correctional experience and training, correctional awareness, and correctional reasonableness, along with the knowledge that a doctor ordered that the Plaintiff be housed on a bottom bunk, plus the plaintiff's continuous reminders to the defendants; this puts the defendants in a sufficiently culpable state of mind." (Opp'n. 2:18-23.)  Plaintiff does not, however, come forward with evidence to support his conclusory argument that

---

[4] A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief.  McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)(per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); Fed. R. Civ. P. 56(c)(4).

11

Defendants were in a "sufficiently culpable state of mind."

### III. Conclusion

Plaintiff fails to come forward with evidence of a triable issue of material fact. Plaintiff fails to come forward with evidence that establishes that Defendants Grissom and Sharp knew that Plaintiff was in danger of falling off of his bunk due to a seizure disorder, and disregarded that risk. The evidence submitted by Plaintiff establishes that Defendants were aware of a lower bunk chrono, but such notice, of itself, fails to establish evidence that they knew of and disregarded a serious risk to Plaintiff's safety. This case turns on whether Defendants Sharp and Grissom knew of the particular danger to Plaintiff and disregarded it. Plaintiff offers no evidence that they were. Judgment should therefore be entered in favor of Defendants.

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is granted. Judgment is entered in favor of Defendants and against Plaintiff. The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated:   **September 26, 2013**

**/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE